# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SHAWN PICKENS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 17-0398-CV-W-BP |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Pending is Defendant's renewed motion for judgment as a matter of law. (Doc. 152.) For the following reasons, Defendant's motion is **DENIED**.[1]

## I. BACKGROUND

This case arises out of two consecutive car accidents that took place on February 10, 2012. On that night, Plaintiff Shawn Pickens was driving westbound on Interstate 70 when he lost control of the vehicle and crashed into the median (the "First Accident"). Three passengers were in the car with Plaintiff: Kevin Wilson, Obinna Nwachukwu ("Obinna"), and Raiyan McKinney. After Plaintiff crashed into the median, a truck driven by BNSF employee Gary Anderson ("Anderson") hit the car (the "Second Accident"). During these events, Plaintiff was injured. He subsequently brought suit against BNSF to recover for the injuries he sustained from the Second Accident.

At the close of Plaintiff's evidence, Defendant moved for judgment as a matter of law, which the Court denied. (Docs. 130, 132.) After the close of all evidence, Defendant again moved for judgment as a matter of law, which the Court similarly denied. (Docs. 136, 138.) At the close

---

[1] Defendant also filed a motion to strike Plaintiff's response to Defendant's renewed motion for judgment as a matter of law because it exceeded the page limit designated by Local Rule 7.0(d)(1)(B). The rule states that opposing suggestions may not exceed 15 pages. However, had Plaintiff requested leave to file a response exceeding the page limit, the request would have been granted. Therefore, the motion to strike, (Doc. 155), is denied.

of trial, the case was submitted to the jury under a theory that Plaintiff's injuries were indivisible, that is, his injuries could not be attributed to one accident or the other. Specifically, the jury was tasked with determining whether Defendant was partly at fault due to:

(1) First, either:

    a. Anderson failed to keep a careful lookout, or
    b. Anderson drove at a speed which made it impossible for him to stop within the range of his visibility, or
    c. Anderson knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or swerved, or slackened speed and swerved, but Anderson failed to do so, and

(2) Second, Anderson, in any one or more of the respects submitted in the paragraph above, was thereby negligent, and

(3) Third, such negligence directly caused damage to plaintiff or combined with the acts of plaintiff Shawn Pickens to directly cause damage to plaintiff.

(Doc. 144, p. 18.) The jury ultimately found Defendant to be 25% at fault and Plaintiff 75% at fault. The jury found Plaintiff's total damages to be $341,538.10. After trial, Defendant filed a renewed motion for judgment as a matter of law, incorporating his previous motions. The motion alternatively seeks a new trial or remittitur. Plaintiff opposes the motion. The Court resolves the parties' arguments below.

## II. <u>DISCUSSION</u>

### A. *Judgment as a Matter of Law*

A party is entitled to judgment as a matter of law only if "a reasonable jury would not have a legally sufficient evidentiary basis" to return a verdict for the non-moving party. Fed. R. Civ. P. 50(a)(1); *Bavlsik v. General Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017). "The law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." *Hunt v. Nebraska Public Power*

*Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002) (citations omitted). When considering a motion for judgment as a matter of law, the Court must

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

*Bavlsik*, 870 F.3d at 805 (quoting *Ryther v. KARE 11*, 108 F.3d 832, 844 (8th Cir. 1997) (en banc) (citations omitted)). Defendant argues that judgment as a matter of law is appropriate because this case should not have been submitted to the jury as an indivisible injury. Specifically, Defendant argues that in order for this case to be submitted to the jury as an indivisible injury, Plaintiff was required to present expert testimony establishing that "the Second Accident caused or contributed to Plaintiff's injuries and . . . was required to do so through competent expert medical testimony."[2] (Doc. 157, p. 2.) The Court disagrees.

First, Defendant conflates the evidence necessary to demonstrate causation for a "sophisticated injury" with the evidence necessary to trigger the indivisible injury rule. A sophisticated injury is one that requires surgical intervention or other scientific techniques for diagnosis. *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000). Proof of causation of a sophisticated injury is not within the realm of lay understanding and must be established through expert testimony. *Id.*; *see also Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002). This requirement was met. Plaintiff's injuries were "sophisticated" – he suffered from road rash, broken ribs, a punctured lung, and other injuries consistent with being involved in a car

---

[2] Defendant also claims that judgment as a matter of law is appropriate because Plaintiff misled the jury by "referencing at trial the two distinct accidents as a single incident." (Doc. 153, p. 26.) The Court disagrees. At trial, the testimony was clear that there were two accidents. And even if Plaintiff used "accident" in the singular form, the testimony evoked by Defendants made the issue clear to the jury. There was no jury confusion.

accident which required surgery and scientific techniques for diagnosis. Dr. Evans testified that some combination of the First and Second Accident caused Plaintiff's injuries, which satisfied the requirement that there be expert testimony of causation. Neither the Plaintiff nor an expert can parse out which of Plaintiff's injuries is attributable to which accident, but the indivisible injury rule was created for precisely such situations.

Second, Plaintiff presented sufficient evidence to trigger the indivisible injury rule. The indivisible injury rule states that "where two or more persons acting independently are guilty of consecutive acts of negligence, closely related in point of time, which cause an indivisible injury; that is, an injury which the triers of fact decide they cannot reasonably apportion among the negligent defendants[,] … the tort-feasors are jointly and severally liable for all of the damages." *Brantley v. Couch*, 383 S.W.2d 307, 311 (Mo. App. 1964). This doctrine applies even though there is a fact question as to whether Plaintiff was affected by the Second Accident by either being in the car at the time of the Second Accident or in such close proximity to the accident that impact from the car, truck or debris was unavoidable.

For instance, in *Daniels v. Dillinger*, 445 S.W.2d 410 (Mo. App. 1969), the plaintiff was a passenger in a car that was successively struck by two other cars. Her claims against the other two drivers was submitted to the jury on a theory that both of them caused or contributed to her injuries, but the injuries were indivisible. *Daniels*, 445 S.W.2d at 413. The driver of the second car argued that the theory was inapplicable because the evidence established that the first impact threw the plaintiff from the car so that she was not in the car at the time of the second collision, and the second car did not hit the plaintiff while she was on the ground. *Id.* The Missouri Court of Appeals reviewed the evidence at length and noted that there was some evidence that suggested that the plaintiff was in the car when both cars struck it, and then concluded

> The jury was entitled to believe none or all of the testimony of any witness, or to accept it in part or reject it in part. Our recasting of the evidence, supra, is not designed to suggest what the jury should or should not have found the facts to be. Rather, what we say is merely to illustrate that the evidence and permissible inferences were sufficient to create a fact issue, and that it was for the jury to decide whether plaintiff's injuries and damages were a proximate result in whole or in part of defendant Dillinger's negligence.

*Id.* at 414 (citation omitted). Notably, expert testimony establishing that some portion of the plaintiff's injuries was caused by the second accident was not presented or required. Also notably, the Missouri Supreme Court has endorsed this understanding of *Daniels*, saying that *Daniels* "involved the question of whether or not the plaintiff was in the car defendant Dillinger struck at the time of that collision. The evidence was conflicting on the point and the court of appeals held that the issue was for the jury to determine . . . ." *Barlow v. Thornhill*, 537 S.W.2d 412, 419 (Mo. 1976). Here, there was expert testimony that Plaintiff's injuries could have been caused by a combination of the two accidents. Therefore, it was for the jury to decide whether Plaintiff was in the car or in sufficient proximity to it when it was struck by Anderson.

With this in mind and considering the evidence in the light most favorable to Plaintiff, the Court finds that there was sufficient evidence to submit the case to the jury as an indivisible injury. In particular, Plaintiff testified that after he hit the median, the last thing he remembers before waking up in the hospital was taking off his seatbelt and reaching for the driver's side door. After the First Accident, Obinna exited the vehicle, crossed the road, and looked back at the car for five to six seconds. Then, the Second Accident occurred. Obinna testified that after the Second Accident, he saw Plaintiff laying near the median. Obinna stated that Plaintiff could not have escaped the car by his own power because the distance Plaintiff traveled was "too far." Further, the evidence indicated that Plaintiff suffered from road rash, broken ribs, a punctured lung, and

5

other injuries consistent with being involved in a car accident. Obinna, who did not experience the Second Accident, testified that he suffered only minor injuries.

Further, the medical experts who testified at trial were unable to identify which of Plaintiff's injuries resulted from the First Accident or the Second Accident. Dr. Joseph Evans stated that, in his opinion, "all of these [injuries] occurred as a result of this accident." Dr. Evans also testified that he was not able to say that any of Plaintiff's injuries were connected to the Second Accident. (Doc. 154-2, p. 17.) Dr. Evans later stated that, other than knowing that Plaintiff was involved in a car accident, he could not give an opinion on any injury that occurred in either the First or Second Accident. (*Id.* at 22.)

If the Court were to adopt Defendant's reasoning, the indivisible injury rule would all but disappear. The law does not require an expert (or a lay witness for that matter) to pinpoint the direct cause of a specific injury where two negligent acts which were closely related in time combine. For the indivisible injury rule to apply, it was sufficient for the experts to testify that Plaintiff's injuries were caused by the sequence of accidents. Asking an expert to determine the exact cause of Plaintiff's injury frustrates the very purpose of the rule. Therefore, the Court finds that the jury was entitled to consider both lay and expert testimony when determining whether and to what extent Defendant caused Plaintiff's injuries.

### B. *New Trial*

Defendant next argues that the Court should grant its motion for a new trial because the jury's verdict was against the weight of the evidence.[3] (Doc. 153, p. 27.) "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the

---

[3] Plaintiff also argues that a new trial should be granted because the Court erred in allowing Plaintiff to admit the testimonies of Dr. Patterson, Ms. Richter, Dr. Evans, and Mr. Christoffersen. (Doc. 153, p. 28.) For the reasons stated in the Court's previous rulings, the Court finds that testimony from these witnesses was admissible at trial and a new trial is unnecessary.

6

evidence – it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *White v. Pence*, 961 F.2d 776 (8th Cir. 1992) (citations omitted). However, the "district court's discretion is not boundless . . . the district court is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* at 780 (quotations omitted). The district court must find that the "jury's verdict was against the 'great,' 'clear,' or 'overwhelming' weight of the evidence." *Frumkin v. Mayo Clinic*, 965 F.2d 620, 624 (8th Cir. 1992) (quoting *White*, 961 F.2d at 780–82).

The jury found Plaintiff's total damages to be $341,538.10. It also found Defendant to be 25% at fault and Plaintiff 75% at fault. This verdict was not against the weight of the evidence. Plaintiff presented evidence that Anderson did not begin to brake until he was fifty feet away from the car and only 0.5 seconds before impact. There was also evidence that Plaintiff's car had reflectors and one or more exterior lights operating, which would have illuminated the car to other drivers. Further, Plaintiff presented evidence that Mr. Anderson was using his cell phone immediately prior to the Second Accident. From this evidence a jury could reasonably conclude that Anderson was negligent and that his negligence contributed to Plaintiff's harms.

For these reasons, the Court does not find that the jury's verdict was against the great, clear, or overwhelming weight of the evidence.

### C. *Remittitur*

Lastly, Defendant asks the Court to remit the verdict.[4] (Doc. 153, p. 30.) "The district court can remit a jury verdict only when it is so grossly excessive that there is 'plain injustice or a

---

[4] Plaintiff also argues that the Court erred in admitting evidence of the amount billed by Plaintiff's medical providers. (Doc. 153, p. 31.) However, the Court considered Defendant's arguments in its motion in limine and for the reasons stated in its Order, the Court finds that both the amount billed and the amount paid to the healthcare provider were reasonably submitted to the jury. (Doc. 108.) The Court further notes that this analysis was recently employed by the

7

monstrous or shocking result.'" *Eckerberg v. Inter-State Studio & Publishing Co.*, 860 F.3d 1079, 1087–88 (8th Cir. 2017) (quoting *Hudson v. United Sys. Of Ark., Inc.*, 709 F.3d 700, 705 (8th Cir. 2013)). The law of the forum state guides the Court in weighing the excessiveness of a verdict. *Id.* at 1088. In Missouri, verdicts are generally excessive in one of two ways: "(1) the jury makes an honest mistake in weighing the evidence as to the nature and extent of the injury and awarding disproportionate damages; [or] (2) when the jury is biased by trial misconduct to award grossly excessive damages." *McCormack v. Capital Elec. Const. Co., Inc.*, 159 S.W.3d 387 (Mo. App. 2004). Neither of these situations applies in this case.

The jury did not make a mistake in weighing evidence as to the nature and extent of Plaintiff's injuries or award disproportionate damages. The parties disclosed to the jury that the total amount billed was $189,413.14 and that the total amount necessary to satisfy the financial obligation to the healthcare provider was $47,124.29. The jury determined Plaintiff's total damages were $341,538.10. This award is not so grossly excessive that it amounts to plain injustice or a monstrous or shocking result. This is especially true considering that the jury could have compensated Plaintiff for his pain and suffering. Therefore, the Court finds that the jury's verdict in this case was not excessive and remittitur is inappropriate.

### III.  CONCLUSION

For these reasons, Defendant's renewed motion for judgment as a matter of law, (Doc.

---

Missouri Court of Appeals to reach the same result. *See Brancati v. Bi-State Develop. Agency*, 2018 WL 6613412 (Mo. App. 2018) (finding the trial court did not err and there was no prejudice in allowing the 'amount charged' for Brancati's medical bills into evidence because the 'amount charged' could be admitted under either the former or the amended version of' Missouri Revised Statute § 490.715.5.)

153), is **DENIED**.

**IT IS SO ORDERED.**

DATE: December 20, 2018

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT